The next case on our calendar this morning is United States v. Domingo, and Mr. Laughlin, you're up first. Thank you very much. Good morning, and may it please the Court, I'm James Laughlin, and I represent the appellant Mark Domingo. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal, and I'll keep an eye on the clock. As explained in Domingo's briefs, the government didn't disprove entrapment as to crimes in general, but what really matters is that it failed to prove either that the agents did not induce him to commit the particular bombing crimes for which he was convicted, or that he was predisposed to commit those particular bombing crimes before the agent's first contact. In Sinelli, the Supreme Court recently reiterated the principle that this Court or any appellate court cannot affirm a conviction based on a legal or factual theory not presented to the jury below. And here, the jury instructions which followed the Court's model instructions and the government's closing arguments to the jury all linked predisposition and inducement to the charged crime. So let me understand your argument. You don't attack the instructions? No. But your argument's basically a sufficiency of the evidence argument, is it not? Correct. You think the judge erred by not granting your motion for judgment of acquittal? Correct. So that takes me to what I think is the central question in this case. How specific does the predisposition and intent to commit a crime have to be? For example, let's assume that your client, and I think the record is sufficient on this to go to the jury, had a predisposition to engage in mass murder. But he wanted to do it with an AK-47 rather than a bomb. I think that's, at least early on, that's a fair, I think, summary of the evidence in the light most favorable to the government. And your position is that because, after some discussions with the government, he decided he wanted to do it with a bomb, there's no jury question on entrapment? That's correct. I do want to start with a caveat that I do agree with, Your Honor. I do believe that there's insufficient evidence of entrapment across the board. Okay. But I want to... Okay. You're going to have a hard time convincing me on that. Okay, okay. So if he'd gone out and actually done what he said he intended to do, which is slaughter people with his AK-47, I don't see how you'd have any viable entrapment defense. So let me... Yeah. Let's focus on the argument you actually made. Right, right, right. Yeah, I want to make the caveat, but like I say, the main thing is it doesn't matter for exactly the reason Your Honor raised, which is the law is clear. The jury instructions and this court's precedent says the government has to disprove inducement as to the crimes charged and disprove predisposition as to the crimes charged. Okay, so now let me ask you about the crimes charged. Yeah. Why does your legal entrapment defense here, as a matter of law, apply to the charge of providing aid to terrorist organ... Not to the making of the bomb, but the other charge for which your client was convicted? Well, that's because that's a very particular charge. It's not providing aid to a terrorist organization in general, it's did you provide support for this particular crime, which is the crime charged in count two, which is the bombing. So you can't divorce the material support charge from the material support of what? So even if there was ample evidence that he intended to go out and kill a bunch of people with his AK-47, that would not be sufficient to support the conviction on count two, if I recall? Absolutely, to either count, because both counts require him to have formed the intent to commit a bombing, either by the attempted bombing, which is one count, or providing material support with the knowledge it will be used for a bombing. So both counts are directly linked to a bombing and require an intent to bomb. Okay, so now having run through that, take me... I think there is evidence from which a good defense lawyer, and he had one, could have argued that there was no predisposition and that the government induced him. But there's also, I think, a lot of evidence that no matter who brought up the idea of a bomb in the first place, your client enthusiastically adopted that and discussed the details and finally, on his own, gave the go ahead. Now, there may be evidence that cuts the other way, but you're asking us to hold that there's not enough evidence to go to the jury on entrapment. How do I deal with that? Well, I think that the key thing is, and I'm going to focus on the five factors this court shall identify for predisposition. Well, the key thing really is inducement and predisposition. Right. So focus on those for me. Right, right, right. Those are the two parts of the entrapment. And I think maybe what's helpful is to talk about the places where those two things collide in the predisposition analysis, where there's a demonstration of reluctance and then further inducement to overcome the reluctance. And therefore, I'd like to focus the court. I think if you go back to the start of this, you'd see things on April 3rd, April 19th. But April 23rd and 24th, I think, are the key parts. That's the point where the people have gathered, the defendant and the other, the agents have gathered the materials for the bomb. They meet at the apartment of the confidential source. And Mr. Domingo clearly doesn't want to go through it. He says, oh, you know what, I want to wait until after Ramadan. No, it's not that he doesn't want to go through with it. He doesn't want to go through with it tomorrow. He wants Ramadan to occur first. And he thinks maybe there aren't going to be enough victims at this particular rally. So it's not that he doesn't have a predisposition to engage in the crime. He doesn't have a predisposition to commit the crime tomorrow. And I don't think that is a, even when viewed in the light most favorable of the government, I think that the conversation reflects him trying to delay for the purpose of backing out because he does not want to go through with it now. And if it had been delayed, he wouldn't have gone through with it later. Now the key thing is, what he says is, first of all, keep in mind, he's always saying like, my faith isn't good right now. I'm having a really hard time in my personal life. I want to experience Ramadan once as a Muslim. And then, you know, what he's, in response to that, the government could have, or the agents could have said, oh, this is good. This is a guy who doesn't really want to do a terrorist attack. Let's try to just continue to dissuade him. Or at least they could have stood back and been neutral to see what he would do. But they say, they make references to him being a warrior for Allah. You know, so they're egging him on. But then the key conversations come the next day. He leaves it saying, listen, I don't want to do this right now. But they made him get to the point where he said, I'll think about it overnight. Instead of just leaving him alone, the FBI agent who's posing as the bomb maker texts him the following night and says, hey, you know, I heard that rally's going forward. I'm really excited. Aren't you? And again, Mr. Domingo's response is, you know, I thought we decided we're not going to do it. I want to have Ramadan. I want to do it over the summer. And he goes, hey, I got enough of both bombs. We can do both attacks. So again, they're egging him on every time he tries. He shows reluctance. They induce further to push him along. That's exactly what the entrapment defense is all about. Well, I think you have plenty of evidence to argue entrapment. I'm not, my question is, could no reasonable jury find that he hadn't, that he made the individual decision without, because he was predisposed to conduct a mass murder, that the better way to conduct a mass murder was through a bomb? Based on this evidence, no. I mean, when you combine that, his reluctance at the end and the further inducement necessary to overcome it. If you add that to the fact that whenever, even in the early stages of the operation, when they were saying, hey, what's your plan? And he didn't have a plan, but he would say, oh, you know, maybe I'll stab my neighbor. Maybe I'll shoot somebody. And then the agent has to go, hey, IEDs are a good idea, right? And then they'd ask him a little further on, like, what's your plan? And he doesn't mention IEDs. He mentions guns. So they have to bring him back around to mentioning IEDs. This was the only fair version of the evidence is that the government did not catch a terrorist. They manufactured one. And that's exactly what the entrapment. Dr. Arlinson has a question. I'm sorry. What do we make of the evidence of his communications with non-government actors that discuss the use of explosives? Well, I think that those, if I understand the ones the court's referring to, I think it's Nama, who is a, who's portrayed on Discord as a Philippine freedom fighter. And I think that the only references, such references were just sort of like looking at her post saying, hey, that's cool. But I don't think that there are any meaningful discussions outside of what he talked about to the agents about any intent to use IEDs himself. That was clearly something that was induced by the agents over time as a calculated method to get them where they wanted to go. But those discussions that were with non-government actors were not induced by the government? Correct, but they happened after the inducement started. And again, I focused on the stuff happening on April 23rd and 24th. But we can't really forget that this begins with the online agent on March 14th and March 16th, where it starts after the Christchurch shootings. Mr. Domingo is sad about it. She pushes him from sad to angry. And in those very first couple of days of conversation, she's talking about how only fairy floss Muslims wouldn't fight back and kill a bunch of people in response to this. So it's hard. You can't. Yeah. Is it your position that the jury could not consider those discussions with non-government actors when deciding whether or not a defendant was predisposed? No, on the contrary, they can consider that. And this court considers that and all the evidence in the light most favorable to the government. I concede that. What I'm saying is that even with that, this is one of those situations where there's only one conclusion, and that is that Mr. Domingo was entrapped, or more accurately to say the government did not meet its considerable burden to prove beyond a reasonable doubt that he was not entrapped. You know, actually, I have about four minutes left, and I think I'll save as many of them as you can, unless Judge Owens has a question. Thank you. Good morning, Your Honors. May it please the Court, Bram Alden for the United States, and I'm joined at council table by one of the trial AUSAs, Reema El-Ammami. Defendant was and aspired to be a terrorist. His goal was to kill the maximum number of American people and to die a martyr. The government's open, the answering brief presented overwhelming evidence of predisposition, and I want to just focus on a few of those. Let's focus on the issue that the defense raises. As I said to your friend at the beginning, I don't doubt that there's ample evidence that he had predisposition to engage in mass murder for ideological reasons. Their argument is more nuanced, I think. Their argument is he had no predisposition to construct a bomb, and that's what he was convicted of. So could you, that would be very helpful for me if you could address that legal argument. Yes, Your Honor. I have two responses to that. The first is that factually, Your Honor pointed out that the question is merely whether any rational juror could have rejected that claim. The defense has admitted that the jury was correctly instructed. And in fact, in closing argument, specifically at page 4 ER 609, 4 ER 610, the defendant made that argument to the jury quite strenuously that he was induced to commit an attack with a bomb. That still doesn't respond to my question. Their argument is there is no evidence, no jury could find anything but that he was induced by the government to build a bomb. So the fact that they argued to the jury, they tried to get the case not sent to the jury, they filed a Rule 29 motion, the judge denied it. So of course they had to argue to the jury the other way. My question is what's the evidence from which a reasonable jury could find with respect to this crime that he wasn't entrapped? Or is it your position, because I think your brief makes an alternative argument, that the specific crime doesn't matter? And that's what I'm trying to find out. That is my second argument. But to address the first, there was ample evidence that this defendant was either inclined to or extremely excited by the prospect of using a bomb specifically to commit this attack. He was the first person in this whole scheme to bring up IEDs. And he did so in the context of saying that his possible attack mode would be a two step attack. First, an IED. Doesn't he say that, I went back because I was interested in that, doesn't he say that after the word IED is first mentioned by the agent? No, the defendant mentions the words IED first. So let's assume I discover that the record is different than that. Would that make a difference to your argument? No, it would not. Because really the fourth factor in the predisposition analysis is whether he expressed any reluctance. So even if the facts are construed in the defendant's favor and the defendant prevails on the argument that IED was mentioned by the agent first, which the government does not agree with, the government's read of the facts is that the defendant said IED. The agent then pointed out how IEDs had been used in Afghanistan to blow up Hummers. And the defendant responded immediately to that with his approach would be a two step attack. The first would be to use IEDs to confuse the enemy and the second would be to go in for the kill with his assault rifle. Beyond that, even if the court construes the facts in the light most favorable to the defense once again, which is against the standard, when the agent later brings up a bombing, the defendant by his own admission jumped at that opportunity because he was excited, and this was his testimony, to commit mass murder with a bomb. What he did when the agent later brought up a bombing was say, that is probably a better idea than, quote, spraying and praying. He thought that a bomb would maximize the number of casualties and that if he could detonate a bomb in the crowd, that the human body would be easy to break and that that would accomplish his goal even more effectively than his initial plan of using an assault rifle. So even if there was some construction of the evidence where the government was the first to bring up IEDs or use those words, use that term, those words, that would not matter. Since I know you're well prepared, can you give me the site where you think Mr. Domingo first brought up the IED? Yes, Your Honor. So there is a discussion with CHS before they meet in person. Yeah, just whatever the record site is. It is either ADR 1397 to 1398 or ADR 1432. The defendant wrote to CHS that fighters in Afghanistan had been, quote, planting IEDs for years, and CHS then responds by mentioning videos of IEDs destroying Hummers in Iraq, and defendant proposed a two-step attack. I also think that it's important to address the point that Judge Rawlinson brought up, which is that the defendant was having conversations about IEDs with others as well, and his characterization, my colleague, my friend's characterization about the evidence is what was made to the jury and not the way this court has to characterize the evidence in the light most favorable to the government. In that light, he had conversations with user Nama about IEDs in which he said, quote, that an IED here would do so, an extra O, much damage, and then he proceeded from that conversation with user Nama about IEDs to meeting with the CHS and immediately saying, I was talking to Nama online about IEDs, and maybe we could use an IED to blow up the freeway because that would trigger a military response. So he was excited about the prospect both when agents mentioned it and when someone online who was completely unconnected to the government mentioned it, too. He also responded to Nama's photo of an IED with heart-eyed emojis, suggesting once again that that was a plan that he was on board with. The second argument, of course, Your Honor, is that even if the court does not decide as a matter of fact with a correctly instructed jury as defendant concedes that there was ample evidence and certainly sufficient evidence for the jury to find that this defendant was predisposed to use IEDs, the court should hold that as a legal matter, what matters is the harm that the defendant intends to cause, not the weapon he intends to use to cause it. And I do think that's actually consistent with past cases that this court has decided. In the Williams case that the defendant mentions in his opening brief, that was a case in which the defendant intended to commit a bank robbery and the government proposed instead that he rob a stash house. And this court pointed out that the amount of money that he intended to achieve in the bank robbery was about the same as the amount of money that he hoped to gain from a stash house robbery. And for that reason, there was predisposition to commit even the other robbery that the government proposed. But in that case, the crimes were identical. In other words, they were both robberies. That's correct. In this case, your colleague says the only crime charged was building a bomb or providing terrorist aid through building a bomb. I agree with that. Does that make a difference? No, because actually in Williams, the crime of robbing the stash house was with the intention to get cocaine, which would have carried a more serious penalty. In fact, a mandatory minimum because possession of drugs for drug trafficking purposes is a more serious, higher penalty crime than bank robbery. So even though there was a robbery contemplated in both scenarios in Williams, that shouldn't make a difference. Beyond that, there is Supreme Court case law and other cases from this circuit that say opportunities and facilities are not inducement. And that is consistent with the idea that the Second Circuit has advanced to, which is that similar crimes is predisposition. A desire to commit similar crimes is predisposition. And providing the opportunities to commit some other form of crime or the facilities to commit it is not inducement. That's also consistent with this court's decision. What's your best Supreme Court case for that? Russell, 411 U.S. 423, says that both opportunities and facilities, and I think facilities is an important word here because the defendant's real claim is that the government was the one providing the bomb and the bombing plot. Beyond that, I would say this defendant had actually probably completed these crimes before the April 23rd period that my colleague is talking about because it was on April 22nd that he personally went to Lowe's to buy over 400 nails to use as shrapnel for a bombing and then told the agents the next day that he bought those nails and chose the length without the government suggesting any length whatsoever because he wanted to maximize casualties and believed that three inches was enough to penetrate vital human organs. Suffice to say, this case is really on all fours with, if not stronger than, this court's decision in Mohamed in which this almost identical claim was brought up and this court affirmed. And I understand completely that this was a jury argument that the defense made and could make and the jury rejected. And because the jury rejected it on sufficiency review, there's simply no way for this court to reverse. I see that I have five minutes, but does the court have any further questions? Judge Rawlinson? Thank you, Your Honors. So I'd like to start with the government's alternative theory and just say that nothing they said this morning responded to the points that I made at pages 5 through 15 of the reply brief, which is one, again, the Supreme Court says flatly you can't consider a new theory for the first time on appeal and this is not a theory that was presented below. Two, they waived it in the way that they wrote their brief. And three, it conflicts, whatever is being done in the Second Circuit, their position now conflicts with this court's precedent. And then the court also, I mean, I'm sorry, the government also said this morning, actually, he completed the crime way back on April, I think, 13th. Again, that's a theory that wasn't even raised in their briefs and we don't consider arguments made for the first time. But it's an issue of law. What? You raised an issue of law. Was there sufficient evidence from which a jury could have found, was there insufficient evidence from which a jury could have found that there was anything but entrapment? So it seems to me that the legal issue for us is to look at the record and determine whether or not there was such evidence. And so I'm not sure the fact that the government hadn't stressed particular pieces of evidence before makes any difference to our analysis. Okay. I was just citing the well-established rule that the court doesn't consider arguments made by the government for the first time. Well, except their argument below was the record is replete with evidence that would rebut entrapment. And I'm not sure they're required to cite every bit of it to the district judge, who's apparently quite content to accept their argument without more information. But go ahead. Well, I would like to use my last two minutes because the government raised Mohammed, so I want to talk about that case. Mohammed is similar in some respects, but critically different in the most important respects. In that case, with government conduct that was far less egregious of what happened here, the court presumed inducement and it also weighed the nature of inducement predisposition factor in the defendant's favor. It also weighed the character and the for-profit factors in the defendant's favor, even though he professed to want to die a martyr for Islam. The court found the other two factors weighed against the defendant. One of them was the reluctance and they said, well, he is the one that brought up bombing for the first time within minutes of the first meeting with the key undercover agent. Obviously, we have something far different what happened here. Let me ask you then, because this is a record issue and there's all these transcripts, so it's possible that I haven't read them in the correct order. Who first mentions IEDs in the conversation? Well, it happens, I think, at the March 16th meeting and what happened, and the government tries to, they said he raised it, well, what Mr. Who first says the word IED? Domingo does, but in a passing way of saying, hey, here's what's going on in Afghanistan. And then because, and this is something that the agents admit these sources trained to do, he jumped on that and said, hey, IEDs. And then from that point forward, it was always the agent that pushed the use of IEDs. So in March 16th, Domingo passively mentions IEDs, doesn't say, hey, let's use them. It's, that was what the government thought was a signal that they could then actively kick up their inducement to make him want to use one. And that's the key thing that says the entrapment defense doesn't allow. Counselor, just so I understand your view of entrapment, if Ted Kaczynski had written his manifesto and said, I want to kill a bunch of people, and a government agent said, well, have you ever thought about bombing them? He goes, you know what, that's a good idea. Then as a matter of law, he's not guilty of the crime because the government agent is the one who suggested the bomb to him. No, Your Honor, I think the devil's in the details. And I think that circumstances matter, but the circumstances here are that the only fair viewing of the evidence is that Mr. Domingo was not predisposed to committing a bombing offense. And it was only the government, depending on the facts. Ted Kaczynski said, I want to kill people. And the government agent says, well, you ever thought about blowing them up? He goes, yeah, that's a good idea. I hadn't thought about that. I mean, I guess if you're going to say that's the universe of facts, then I would say that would be similar enough that it would be hard for the government to prove an entrapment, or disprove an entrapment defense as to a bombing crime. But as we know, real world facts are a lot more complicated than that. Hard for, hard for is not the issue. What you're saying is that it would be impossible. It was impossible, correct. And under Judge Owens, it's hypothetical? I'm saying, yeah, again, it's a very thin hypothetical. But if there are no other facts that suggest that left to his own devices, Ted Kaczynski would have used a bomb, then based on what Judge Owens said, it sounds like the government is the one that induced that new crime other than what Ted Kaczynski might have done on his own, absent that inducement. Counsel, thank you. Thank both counsel for their excellent briefing arguments in this case, and this case will be submitted.
judges: RAWLINSON, HURWITZ, OWENS